FILED

1  | Marcus R. Mumford, CA Bar No.243270

**CORVUS LAW GROUP, LLC**

2  | 1007 5th Avenue, Suite 904
San Diego, CA 92101

3  | Phone: (888) 315-4735
Facsimile: (888) 316-0929

10 DEC 21 AM 10: 14

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

4

5  | mrm@corvuslaw.com

Attorneys for Plaintiffs

6

7  | **UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

8

9  | BENJAMIN R. DANIELS AND DIANA
L. DANIELS,

CASE NO.: CV10 9812 PA (MANx)

10  | *Plaintiffs,*

**COMPLAINT FOR:**

11  | v.

12  | BAC HOME LOANS SERVICING LP,
MORTGAGE ELECTRONIC
RECORDING SYSTEM, AND

1. **DECLARATORY RELIEF;**
2. **QUIET TITLE;**
3. **ACCOUNTING;**
4. **REFUND FEES & COSTS.**

13  | AMERICA'S WHOLESALE LENDER,

**DEMAND FOR JURY TRIAL**

14  | *Defendants.*

15

16  | Benjamin R. Daniels and Diana L. Daniels, (hereinafter collectively referred to as

17  | "Plaintiff" or "Plaintiffs") by and through counsel, Marcus R. Mumford and Corvus Law

18  | Group, LLC, complains of Defendants, and for cause of action alleges as follows:

19

20  | **STATEMENT OF THE CASE**

21  | Plaintiffs bring this action in order to prevent the improper taking of their family

22  | home by false pretenses. The family seeks further redress for Defendants' failure and

23  | willful refusal to provide them with information concerning their mortgage including a

24  | full accounting of the substantial monies the family has paid toward their mortgage.

25  | America's Wholesale Lender appears on the Note and Trust Deed as the family's

26  | lender, but it now disclaims this status. Bank of America claims to be servicing the note

27  | on behalf of an unnamed note holder, yet it has failed to produce any evidence, despite

28

COMPLAINT

1  repeated requests, of the true note holder's identity.  Importantly, the records of Riverside

2  County show no evidence of the purported assignments of the Deed of Trust.

3  Defendants must not be allowed to take the family's money and fail to account

4  for it, obfuscate the identity of the true note holders, or to otherwise interfere with the

5  family's interests, nor should the Defendants be allowed to double or triple recovery at

6

7  the family's expense all while leaving the family exposed to multiple liability for the

8  same negotiable instrument.

9  **PARTIES, JURISDICTION, VENUE**

10  1.  Plaintiffs, Benjamin R. Daniels and Diana L. Daniels, are actual citizens of

11  California, who reside at 45241 Banff Springs St., Indio, CA 92201.

12  2.  Defendant, BAC Home Loans Servicing LP (hereafter "Bank of America") is a

13

14  California company, with its principal place of business in Simi Valley, California and at

15  all times relevant herein was doing business in the State of California.

16  3.  Defendant, Mortgage Electronic Recording System (hereafter "MERS") is a

17  Virginia company, with its principal place of business in Reston, Virginia and at all times

18  relevant herein was doing business in the State of California.

19  4.  Defendant, America's Wholesale Lender (hereafter AWL) is a New York

20

21  company, with its principal place of business in Van Nuys, California and at all times

22  relevant herein was doing business in the State of California.

23  5.  This Court has jurisdiction of this action pursuant to 28 U.S.C. § 2201, California

24  Code Civ. Proc. § 1060 et seq. (declaratory judgment) and California Code Civ. Proc.

25  §760.020 (quiet title) and 28 U.S.C. § 1332(a). This Court also has, pursuant to 28 U.S.C.

26  § 1367, supplemental jurisdiction over all other claims that are so related to claims in this

27

28  -2-

action that they form part of the same case or controversy under Article III of the United States Constitution.

6. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331. One or more parties to this action are national associations or institutions federally regulated under 12 U.S.C. §§ 2601 et seq. (RESPA) and 15 U.S.C. §§ 1601 et seq. (TILA).

7. Venue is proper in the United States Court for the Central District of California, pursuant to 28 U.S.C. § 1391(c).

8. The amount in controversy exceeds $75,000.00 exclusive of interest and costs.

9. An actual controversy exists between Plaintiff and defendants regarding the amenability of the subject properties to sale by Defendants, which may be resolved by the Court pursuant to 28 U.S.C. § 2201, California *Code* Civ. Proc. § 1060 et seq. (declaratory judgment) and Rule 57 FRCP.

10. The Court should appropriately advance this matter on the calendar as provided by Rule 57, F.R.C.P., and promptly enter its Order declaring that defendants lack any interest under the Trust Deed which may be enforced by lien upon or sale of the subject property.

11. Plaintiffs here are the borrowers/purchasers. Defendants are the purported lender, its successors and assigns. The investors, whose identities have been withheld by the Defendants, or unknown successors in interest, or currently unknown entities who claim interest in the property, may be named as John Does.

## THE PROBLEMATIC ORIGINATION OF THE LOAN

12. Plaintiffs purchased for value, and are the owners of, the property commonly known as 45241 Banff Springs St., Indio, CA 92201, in Riverside County (hereinafter

-3-

COMPLAINT

"the Subject Property") under a deed thereto made and recorded in the Riverside County Recorder's Office.

13. On or about October 5, 2004, Plaintiffs executed a Promissory Note (hereinafter "the Note") in favor of AWL listed as "Lender" on the loan documents (may be from time to time hereinafter referred to as "Lender").

14. The parties to the Note were designated as the Plaintiffs and AWL.

15. MERS purports to be the successor in interest of the Note.

16. On or about October 5, 2004, Plaintiffs made and delivered a Deed of Trust (hereinafter "the Trust Deed"), conveying the Subject Property in trust for the purposes recited therein to CTC Real Estate Services as Trustee. Said Trust Deed was thereafter recorded in the Riverside County Recorder's Office.

17. The Trust Deed and Note constitute a contract of adhesion and where terms of the contract are subject to more than one meaning, the language should be construed strongly in favor of the Plaintiff.

18. The parties to the Trust Deed were the Daniels and Mortgage Electronic Recording System ("solely as nominee for Lender", and as purported "Beneficiary" in boilerplate). The Trust Deed named "America's Wholesale Lender" as the "Lender" but, unbeknownst to Plaintiffs, AWL did not fund the mortgage and had no intention of funding the mortgage.

19. Yet, the Trust Deed expressly only reserves the right to the "Lender" to cause the Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold.

20. Funding was actually provided by investors in mortgage-backed securities, who bought undivided interests in the revenue stream from a pool of mortgages.

-4-

COMPLAINT

21. Further, according to the Trust Deed, only the "Lender" or "Trustee" can substitute trustee and Defendants in the current case are neither the lender, the trustee, nor an agent thereof.

22. In fact, Bank of America, who claims to be servicing the loan has misrepresented or purposefully withheld the identity of the "Note Holder" as defined under Plaintiffs' Promissory Note, and the "Beneficiary" as defined under Plaintiffs' Trust Deed.

23. Bank of America has failed to present evidence, upon Plaintiffs' numerous pre-litigation written and verbal requests including a letter sent regarding the unidentified and/or misrepresented current foreclosor's authority to foreclose, to which Bank of America did not respond at all.  Bank of America has consistently obfuscated Plaintiffs' numerous requests for basic information (about who owned their note, and who was being paid for it, and in what amounts).

**THE FUNDING AND IMPROPER SECURITIZATION**

24. The loan was funded by an undisclosed warehouse lender, which received the funds from, or was reimbursed them by, investors in the securities backed by this mortgage.  When the warehouse lender transferred the Note to a securitization pool, it transferred, and lost any interest in the mortgage or trust deed pursuant to California law.

25. On information and belief, AWL was making loans to the specifications of the ultimate purchaser of the note.

26. Upon information and belief AWL's function was limited to obtaining the Note, in exchange for a fee, as a preliminary step to "securitization" of the debt as described above.

27. Plaintiff's loan was, in fact, securitized and sold to investors in mortgage-backed securities secured by the subject property.

-5-

COMPLAINT

28. Plaintiff never consented explicitly or implicitly to securitization of its loan which securitization has materially altered Plaintiff's loan experience and therefore constitutes a material breach of the contract by AWL, and the other Defendants.

29. On information and belief, all Defendants participated, aided, and abetted securitization of the loan.

30. Because of the improper securitization of the loan, Plaintiff has been unable to communicate directly with the holder of its Note which Plaintiff reasonably contemplated, at the inception of the loan, to be a basic term of its agreement and which was a basic term of the agreement.

31. Because of the improper unpermitted securitization of the loan, Plaintiff has been unable to discern the true owner of its executed paper.

32. Securitization in and of itself was a material breach of contract.

33. Upon information and belief, Plaintiff's Trust Deed and Note were intentionally separated by assignment of the Trust Deed without assignment of the Note during the securitization process thus avoiding each respective holder's foreclosure interest.

34. Or, in the alternative, upon information and belief, the said Trust Deed and Note were not assigned or transferred in whole or in part but an assignee purports interest therein.

35. In the case of either alternative, mentioned above, lacking such an interest, the lender cannot foreclose in its own right.

36. Only the owners of the debt, the investors in the securities backed by Plaintiff's mortgage, may be able to do so.

37. The investor or investors in the securities backed by Plaintiff's mortgage has not attempted to call a default upon the Plaintiff nor has the investor threatened to foreclose.

COMPLAINT

38. This is unaffected by the fact that the lender, under a "Pooling and Securitization Agreement", may have possession of the Note as a "custodian" for the investors said mortgage backed security (hereafter "MBS").  Such possession is not the possession required to be a holder in due course authorized to enforce the Note.

39. On information and belief, the loan in question followed the ordinary course of securitization as described below.

40. In the ordinary course of securitization, notes evidencing pooled debts are gathered and lodged in a repository, in the possession of a "custodian" who acts for the investors, and has no right or interest of his own.  Purchasers of MBS are given "certificates" certifying their ownership of the "loans" and their right to obtain the payments due under the Notes.  Frequently, the "custodian" appointed by the securitizers is the original lender.  Since investors in MBS do not sign the Pooling and Servicing Agreement, under the typical Statute of Frauds, such agreements do not bind the interest of the investors in the mortgage/trust deed.  Further, the "custodian" appointed by the securitizers cannot be a "holder in due course" of the Notes.  This means that the custodian has no authority to foreclose.

41. A "holder in due course" is defined by the Uniform Commercial Code Section 3-302.  Under §3-302(1)(a), (b), a holder in due course must be one to whom the instrument is "negotiated," and who takes it for value and in good faith.  Notes are not "negotiated" - transferred with intent to confer the power to enforce - to custodians, who do not take for value, and who, in good faith, have the instrument only for safe keeping.  "Value" and "Consideration" are defined in §3-203.

42. Under UCC 3-306, a non-holder is subject at any time to rescission of delivery, and re-possession by the owner.

-7-

COMPLAINT

43. To demonstrate a right to foreclose, it is not sufficient for MERS merely to have possession of the Note. If the loan has been securitized, the possessor of the Note is presumptively merely a custodian. If MERS has possession of the Note merely as a custodian for investors, MERS may not foreclose without demonstrating an express agency to do so on behalf of the investors.

44. Any Pooling and Servicing Agreement unsigned by investors in MBS is not an express agency because it does not satisfy the Statute of Frauds.

45. In the ordinary course of securitization, typically, a Pooling and Service Agreement purports to set up a "common law trust," for which the securitizers appoint a trustee. Loans are sold to the trust, and the debts accumulated in a trust "pool." This appears to follow the classic pattern of a trustor (a purported lender or lenders) who assigns assets to a trustee, to be managed for the benefit of a beneficiary. However, transfer to the trust is intended as a true sale for tax purposes, not a transfer in trust, and there is no beneficiary. The trust is simply a vehicle for pooling of the debts, and sale of the assets to others, the investors in the MBS. The investors give value, and receive certificates, which certify their ownership of the debt. Such certificates may be regarded as replacement of the Notes. This is not a beneficial interest: it is expressly ownership. The trust is emptied of assets, and the trustee thereafter typically performs no functions. The securitizers appoint loan servicers for the loans, but such appointment does not bind the investors.

46. In the ordinary course of securitization, Pooling and Servicing Agreements are entered into by the securitizers, not including the investors in MBS. Certificates are executed by the "trustee" and the original lenders.

COMPLAINT

47. In the ordinary course of securitization, transfer of the beneficial interest in a trust deed confers upon the investors in the MBS authority to declare a default and authorize foreclosure.

48. These are not powers which a trustee named in a trust deed can exercise without authorization of the beneficiary. Nor, if challenged, can such authorization be presumed.

49. While it may be generally presumed that a trustee acts at the behest of the beneficiary, it is doubtful, in securitization cases, that the trustee knows who the beneficiaries are, or has obtained instruction from them.

50. Thus, servicers in the situation described above, as is the case at bar, may not declare default or authorize foreclosure unless they can show their agency to act for the investors.

51. This action, therefore, requires a declaration that the purported lender, its successors and assigns, have no right to foreclose on their own behalf, requires them to demonstrate any right they claim to foreclose as agents of the investors in MBS and, failing such demonstration, requires investors to come forward to assert their interest, or to have the title quieted against them, leaving only a personal obligation.

52. Upon information and belief, the debt was pooled with similar debts pursuant to a Pooling and Servicing Agreement between Lender and a servicer, in which that servicer purported to act as Trustee of a Trust created thereby, for the purpose of selling such debts as securities to investors, and appointing a separate servicer of the pooled debts, and a custodian of the Notes evidencing such debts, for the benefit of such investors.

53. Upon information and belief, such investors and/or the person or persons unknown who sold such securities have obtained insurance against default on the underlying obligations in the form of a credit default swaps or other credit enhancements.

-9-

54. The cost of such credit default swap or other credit enhancement was, as applicable to the subject loan, charged to borrower.

55. Notwithstanding the transfer of the obligation under said Note as herein described, no transferee thereof has recorded a copy of any security agreement providing any security interest in either the Trust Deed or any appropriate affidavits, pursuant to California Code, in order to perfect any right of enforcement under the code.

56. As a result of the transfer of the Note as part of these securities transactions, and of the lack of such recordings, Defendants are not the present owners of the debts under the respective Note or the obligees thereon.

57. Plaintiffs, and, upon information and belief, Defendants, do not know who is or are the present owners of the debt evidenced by the Note, or the obligees thereon.

58. Neither the investors in the mortgage backed securities nor any other entity or person who had a right to payment from the Plaintiffs or who was a lawful beneficiary under the Trust Deed ever declared a default of the note executed by Plaintiffs and no true beneficiary with a beneficial interest under the Trust Deed ever declared a default under the Note and Trust Deed and no proper beneficiary under the Trust Deed ever directed or will ever direct a sale of the property owned by Plaintiff in which Lender is named as beneficiary at issue in their action.

59. On information and belief, no Defendant is a holder in due course as defined in UCC 3-302 and are thus subject to all defenses and claims that the consumer could raise against the assignor under UCC 3-305.

COMPLAINT

**MERS'S ROLE IN THE TRANSACTION AND DEFENDANTS' TACIT CONSPIRACY**

60. Mortgages are governed by two bodies of law. While the making, taking, and transfer of promissory notes is governed by the law of contracts and the uniform commercial code, the making taking and transfer of trust deeds in real property is governed by the law of real property, real property assignments and the law of recording.

61. MERS is a clearinghouse and tracking system whereby mortgages are traded through electronic means.

62. MERS claims to bypass the need for age honored and traditional recording formalities by virtue of its electronic ownership tracking system.

63. The MERS electronic ownership tracking system is not public.

64. On information and belief, the MERS electronic ownership tracking system is not reliable, accurate, or comprehensive and is certainly not as simple as the state real property recording system.

65. MERS was named as the beneficiary in the original Deed of Trust, but "solely as a nominee" for the "Lender."

66. MERS risked no money in the performance or non-performance of the obligation tied to the Trust Deed.

67. Therefore, MERS was not a valid beneficiary under the Trust Deed.

68. MERS, claiming to be a beneficiary under the Deed of Trust, never had a pecuniary interest in the payments applied to the Note.

69. MERS does not have a valid agency relationship with any true party in interest.

70. MERS has never had a valid agency relationship with any true party in interest.

-11-

COMPLAINT

71. The deed of trust statutes contemplate that a beneficiary under a deed of trust must be a true party in interest, with the rights of a stakeholder.

72. California law regarding non-judicial foreclosure does not contemplate that the "beneficiary" of the deed of trust may be a computer database.

73. MERS is not a Lender or Beneficiary under the Trust Deed and had no legal interest to transfer to any entity, including Bank of America, MERS, AWL or MERS.

74. Plaintiffs' Trust Deed (construed strictly against the maker) also recognizes who the true party in interest in the transaction is, stating that the following rights belong to the "Lender", not the Beneficiary:

    a.  "Lender" releases the security interest.

    b.  Notices are to be sent to "Lender".

    c.  "Lender" has the right to enforce the security instrument.

    d.  "Lender" shall appoint the substitute trustee.

    e.  "Lender" invokes the power of sale by ordering the Trustee to sell the property.

75. Clearly, MERS is not the "Lender" and cannot properly perform any of these functions.

76. MERS and Defendants, and each of them, misrepresented or ratified others' misrepresentations of each entity's claimed legal status in connection with the Daniels's note and deed of trust.

77. Defendants failed to disclose the true beneficiary at all (MERS was not a true beneficiary). In fact, no true beneficiary existed after the origination of the loan, as the interest in the promissory note, arguably held by the investors in the mortgage backed

-12-

COMPLAINT

securities, was destroyed by the parsing and tranching of the debt with other borrowers' debts.

78. MERS and Defendants, had reason to know that the Deed of Trust, and Assignment of Deed of Trust contained false claims and recorded them or caused them to be recorded anyway in violation of California law.

**ADDITIONAL OVERREACHING AND MISFEASANCE BY DEFENDANTS**

79. Plaintiffs refinanced into this loan in 2004 and at the same time were granted a 2nd unneeded mortgage line of credit by the lender in the amount of roughly $102,000 which line caused the aggregate value of the loans to greatly exceed the value of the property value and the Plaintiff's capacity to pay.

80. This line of credit was clearly extended to a financially overburdened consumer on terms which make default and foreclosure the likely result.

81. The payments on the unrequested and unneeded second caused delinquency on the 1st mortgage.

82. The loan closing was very rushed. The title agent stated that she had only 20 minutes to sign because someone was coming in to sign 20 minutes later. The loan closing was like a waiting room at the hospital or like the DMV. Plaintiffs would not have signed without the overt pressure from the title agents.

83. Plaintiff Diana asked questions, but the title agent glared and said (essentially), "either sign or we can schedule another time next week which could adversely affect your loan closing."

84. Prior to this loan, Plaintiffs had never missed payments or carried any balance on credit cards and had very good credit.

-13-

COMPLAINT

85. In Mid November of 2010 Plaintiffs spoke with Bank of America on the 2nd mortgage and told the woman they spoke to on the phone that they wanted to get current on their mortgage and keep their home.  Plaintiff explained that they have the ability to pay the loan upon the impending liquidation of a hedge fund that Plaintiffs had invested in.  Once that liquidation occurred, Plaintiffs will be able to become current immediately.

86. On November 28, 2010 Plaintiffs spoke with a bank representative on the 1st mortgage.  They explained that they wanted to keep their home and get current with the payments.  Plaintiff explained the situation with the liquidation of the hedge fund and further explained that they were trying to get money out of the fund, but it keeps getting delayed.  Plaintiffs explained that the liquidation situation was out of their control. Plaintiff advised that they had procured a new job so they would have income again.

87. Defendants did not bat an eye at Plaintiffs' explanation and, after all of that, advised that the sale date on Plaintiff's home was December 23rd.

88. Bank of America exercised abusive collection practices in getting payments on the loan stating (essentially) "if you do not make payments immediately the sheriff will immediately come to your residence to make sure you have all your stuff out of the house" and "if you don't pay it in full, you must have your things out of house at least two weeks before the auction date".  Bank of America's agent affirmed that he was telling plaintiffs that they must have their things out two weeks before Dec 23, 2010.

89. Plaintiffs allege that their claims offset the amount of delinquent payments OR plaintiffs are not in default because of Defendants' misconduct concerning the underlying transaction.

-14-

COMPLAINT

90. Plaintiffs make only state statutory and common law claims in this complaint and to the extent that any claim is completely preempted by federal law, plaintiff does not make it.

### FIRST CLAIM FOR RELIEF
**(Breach of Contract)**

91. Plaintiffs incorporate herein by reference paragraphs all hereinabove.

92. The identity of the "Lender" was a material term of the Trust Deed and Note. Defendant AWL breached its agreement because it purported and promised to be "Lender" in the trust deed, yet did not lend funds to Plaintiffs.

93. Only Trust Deed "Lender" or its successor or assignee is entitled to cause the Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Since AWL was not "Lender" at the inception of the loan (it merely advanced funds from investors), neither it nor its successor is entitled to invoke the power of sale. Bank of America, Mortgage Electronic Recording System, or AWL or all three invoked the power of sale and thus breached this material term.

94. Plaintiff never consented explicitly or implicitly to securitization of its loan which securitization has materially altered Plaintiff's loan experience and therefore constitutes a material breach of the contract by AWL.

95. As a direct and proximate result of the Defendants' conduct, Plaintiffs have incurred, among other things, substantial damages, in an amount to be shown at trial.

96. Moreover, Defendants' conduct has forced Plaintiffs to retain an attorney to obtain the benefits they are owed under the Agreement. As such, Plaintiffs are entitled to recover their attorney's fees and costs associated with this lawsuit.

-15-

COMPLAINT

1

## SECOND CLAIM FOR RELIEF
### (Breach of Covenant of Good Faith and Fair Dealing)

2

3   97. Plaintiffs incorporate herein by reference all paragraphs hereinabove.

4   98. Bank of America by failing to present evidence, upon Plaintiffs' numerous pre-

5   litigation written and verbal requests, including letters, regarding the unidentified and/or

6   misrepresented current foreclosor's authority to foreclose has breached the covenant of

7   good faith and fair dealing.

8
    99. As a direct and proximate result of the Defendants' conduct, Plaintiffs have
9
    incurred, among other things, substantial damages, in an amount to be shown at trial.
10

11   100.    Moreover, Defendants' conduct has forced Plaintiffs to retain an attorney

12   to obtain the benefits they are owed under the Agreement.  As such, Plaintiffs are entitled

13   to recover their attorney's fees and costs associated with this lawsuit.

14
## THIRD CLAIM FOR RELIEF
### (Intentional or Negligent Misrepresentation)
15

16   101.    Plaintiffs incorporate each of the allegations set forth in the foregoing

17   paragraphs by this reference.

18
     102.    Because Bank of America, who claims to be servicing the loan has
19
     misrepresented or purposefully withheld the identity of the "Note Holder" as defined
20
     under Plaintiffs' Promissory Note, and the "Beneficiary" as defined under Plaintiffs'
21
     Trust Deed, Bank of America has therefore committed misrepresentation.
22

23   103.    Because Bank of America has failed to present evidence, upon Plaintiffs'

24   numerous pre-litigation written and verbal requests including a letter sent regarding the

25   unidentified and/or misrepresented current foreclosor's authority to foreclose, to which

26   Bank of America did not respond at all.  Bank of America has consistently obfuscated

27   Plaintiffs' numerous requests for basic information (about who owned their note, and

28

1  who was being paid for it, and in what amounts), Bank of America has therefore

2  committed misrepresentation.

3      104.    Because, MERS falsely claimed to be a beneficiary to the Daniels' Deed

4  of Trust when it was not, and falsely purported to assign AWL's claimed interest to aid in

5  the wrongful foreclosure process.

6

7      105.    Because AWL falsely claimed that it had lent money to the Daniels when

8  it did not.  The Daniels had no reason to doubt that AWL was their "Lender" as they

9  represented on the Daniels' Note and Trust Deed.  The Daniels had no way of knowing

10  that their true Lenders were investors and that they would never be able to identify or

11  negotiate with their contractual counter-parties again.

12      106.    On August 19, 2010, MERS falsely claimed that it was the Daniels'

13
14  "creditor" when it was not.

15      107.    AWL misrepresented that Plaintiffs' loan would not be securitized.

16      108.    Because Defendants failed to disclose the true beneficiary at all (MERS

17  was not a true beneficiary).  In fact, no true beneficiary existed after the origination of

18  the loan, as the interest in the promissory note, arguably held by the investors in the

19  mortgage backed securities, was destroyed by the parsing and tranching of the debt with

20
21  other borrowers' debts, therefore all defendants should be held liable for negligent or

22  intentional misrepresentation.

23      109.    All of the foregoing misrepresentations were material.  The Daniels,

24  consumers, reasonably relied on the statements made by the professional servicing

25  companies, and claimed "lenders," as demonstrated by these actions of reliance: (1) the

26  Daniels closed the loan; (2) the Daniels paid on the loan even during hardship; (3) the

27  Daniels sent inquiries to these Defendants to give them a chance to comply with reason

28                                              -17-

and state law and provide information supporting their claimed contractual rights to notice a default and non-judicially foreclose.

110.     Bank of America made servicing fees and profits in the private securitization of the Daniels' Notes which securitization was fraudulent.

111.     MERS has made money in its scheme with the banks that created it to avoid paying recording fees to the states for securitizations, and to smooth the securitization process—but more importantly to fool homeowners, who had no idea that their loans were actually funded by third party investors, and that they would never again be able to identify or negotiate with a true party in interest.

112.     As a direct and proximate result of the Defendants' conduct, Plaintiffs have incurred, among other things, substantial damages, in an amount to be shown at trial.

113.     Moreover, Defendants' conduct has forced Plaintiffs to retain an attorney to obtain the benefits they are owed under the Agreement.  As such, Plaintiffs are entitled to recover their attorney's fees and costs associated with this lawsuit.

### FOURTH CLAIM FOR RELIEF
**(Violation of California Consumer Protection Statutes)**

114.     Plaintiffs incorporate herein by reference all paragraphs hereinabove.

115.     Through the actions they have taken, Defendants have violated the California Civil Code Section 1770, the California Business and Professions Code 17500-17509, and the California Financial Code.

116.     As a direct and proximate result of the Defendants' conduct, Plaintiffs have incurred, among other things, substantial damages, in an amount to be shown at trial.

-18-

COMPLAINT

117.    Moreover, Defendants' conduct has forced Plaintiffs to retain an attorney to obtain the benefits they are owed under the Agreement.  As such, Plaintiffs are entitled to recover their attorney's fees and costs associated with this lawsuit.

### FIFTH CLAIM FOR RELIEF
#### (Quiet Title)

118.    Plaintiffs incorporate herein by reference all paragraphs hereinabove.

119.    Because, upon information and belief, because Plaintiff's Trust Deed and Note were intentionally separated by assignment of the Trust Deed without assignment of the Note during the securitization process thus avoiding each respective holder's foreclosure interest or were not assigned or transferred in whole or in part, but an assignee purports interest therein.

120.    And because all Defendants have no interest in the subject property.

121.    And because no investor in MBS with rights to foreclose has asserted its property interest.

122.    And, if Defendants cannot demonstrate any right they claim to foreclose as agents of the investors in MBS.

123.    Title should be quieted in Plaintiffs.

124.    The Court, pursuant to 28 USC §2201 and California Code Civ. Proc. §760.020 (quiet title), should enter its Order herein forthwith quieting title to the subject property in plaintiff and against defendants freeing title to the subject property of the lien of the Trust Deed and leaving any debt unsecured by any interest in the subject property.

### SIXTH CLAIM FOR RELIEF
#### (Lack of Formation of Contract)

125.    The Trust Deed was void upon execution because the statements contained therein were untrue and the failure to disclose these facts to the borrower acted

-19-

COMPLAINT

1   to the borrower's detriment and there was no meeting of the minds, no consideration and

2   an utter failure to create a security instrument.

### SEVENTH CLAIM FOR RELIEF
### (Declaratory and Injunctive Relief)

126.   The Defendants in this dispute will seek affirmative relief by trying to
foreclose on the Daniels's Residence non-judicially.  However, Defendants failed to
provide the Daniels with any evidence of their authority to foreclose, or a valid
accounting for their note, or any other evidence that corroborates their attempts to
foreclose.  This forced the Plaintiffs to sue, as is their right under the Trust Deed's
express language acknowledging Plaintiffs' rights to bring court action to assert the
nonexistence of default or any other defense they have to acceleration and sale.  On the
foreclosure claims, the Plaintiffs are actually defending the right of a proper foreclosor
(which Defendants claim they are) to foreclose, now in a judicial forum by necessity.

127.   As a general rule, a person who is an attorney-in-fact or an agent solely
for the purpose of bringing suit is viewed as a nominal rather than a real party in interest
and will be required to litigate in the name of his principal rather than in his own name.

128.   MERS is not the real party in interest since it styles itself merely as a
nominee of the assignee of the beneficial interest in the Deed Trust, does not legitimately
claim to be the holder of the Note with the power to enforce the instrument, does not
claim that it has ever been in possession of the note, cannot explain the circumstances
surrounding the apparent absence of the original of the promissory note and has never
identified the name of the purported assignee of the note from the original lender.

129.   Because, instead of asserting it is owed anything on its own behalf, MERS
claims to serve as the "nominee" of the entities that are actually entitled to repayment and

-20-

COMPLAINT

because, MERS does not have a valid agency relationship with any true party in interest and because MERS is not a valid Trust Deed beneficiary, and for the other reasons laid out in this complaint, the preceding items should be judicially declared, and it should be further declared that MERS does not have the authority to supersede and ignore the traditional recording methods.

130.    Defendants have refused to provide requested evidence showing the Note's default and the authority to enforce the Deed of Trust, and marched to a Trustee's Sale without right. This forced the Plaintiffs to sue, to provide a forum for relief. Consequently, the Defendants are subject to the jurisdiction of the court and required to satisfy requirements of standing and the authority to conduct the sale before conducting it.

131.    Since, to demonstrate a right to foreclose, it is not sufficient for MERS merely to have possession of the Note and since MERS has possession of the Note merely as a custodian for investors, MERS may not foreclose without demonstrating an express agency to do so on behalf of the investors. Plaintiff asks for declaratory and injunctive relief on this point.

132.    In fact, the purported lender and servicer are not entitled to the Subject Realty. They parted with no money and they are entitled to collect none. Plaintiff asks for declaration and injunction to this effect.

133.    Because of the above facts, the Defendants should be declared to have no right to foreclose on their own behalf or should be required to demonstrate any right they claim to foreclose as agents of the investors in MBS.

134.    Defendant Servicer's assertions to the Court herein that they hold and are entitled to enforce the debt would constitute a fraud upon the Court, subjecting

-21-

COMPLAINT

defendants to sanctions and imposition of fees and costs under Rule 11, F.R.C.P, and California Code of Civil Procedure § 1021 et seq.

WHEREFORE, Plaintiffs pray that the Court enter its Order herein:

1.   Enjoining further dispositions of the subject realty pending resolution hereof;

2.   Declaring that Defendants lack any interest in the subject property which permitted them to foreclose, or attempt to foreclose, the Trust Deed and/or to sell the subject property;

3.   Terminating all present collection activities under any security in the subject property and enjoining any further such collection actions not originated by the owners of the debt;

4.   Declaring that the Trust Deed is not a lien against the subject property, ordering the immediate release of the Trust Deed of record, and quieting title to the subject property in Plaintiffs against defendants and all claiming by, through, or under them;

5.   Refunding to Plaintiffs from Defendant Beneficiaries, jointly and severally, all fees and charges paid under the Trust Deed, and awarding Plaintiffs costs of the action, including a reasonable attorney's fee; and

6.   For such other and further relief as the court deems just in the premises.

DATED: December 15, 2010

By: _____
    MARCUS R. MUMFORD
    Attorney for Plaintiff

-22-

COMPLAINT

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Percy Anderson and the assigned discovery Magistrate Judge is Margaret A. Nagle.

The case number on all documents filed with the Court should read as follows:

## CV10- 9812 PA (MANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===============================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[_] Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[_] Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

**CIVIL COVER SHEET**

| I (a) PLAINTIFFS (Check box if you are representing yourself □) | DEFENDANTS |
|---|---|
| BENJAMIN R. DANIELS AND DIANA L. DANIELS, | BAC HOME LOANS SERVICING LP, MORTGAGE ELECTRONIC RECORDING SYSTEM, AND AMERICA'S WHOLESALE LENDER, |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>Marcus R. Mumford, CA Bar No.243270<br>Corvus Law Group, LLC<br>1007 5th Avenue, Suite 904, San Diego, CA 92101<br>888-315-4735 | Attorneys (If Known) |
|---|---|

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes   ☑ No   ☐ MONEY DEMANDED IN COMPLAINT: $_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

28 U.S.C. 2201 Declaratory Judgement/Quiet Title

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | REAL PROPERTY | | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 210 Land Condemnation | IMMIGRATION | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | ☐ 462 Naturalization Application | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 465 Other Immigration Actions | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | ☑ 290 All Other Real Property | | | ☐ 871 IRS-Third Party 26 USC 7609 |

CV10 9812

**FOR OFFICE USE ONLY:**   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**CIVIL COVER SHEET**

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                        ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                        ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                        ☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles<br>Ventura | Virginia |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
    **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____  Date 12/15/2010

    **Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |